# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINNY BURNS,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 09-1686-JEM<br><br>MEMORANDUM OPINION AND ORDER REVERSING  DECISION OF COMMISSIONER AND REMANDING FOR FURTHER PROCEEDINGS |

**PROCEEDINGS**

On September 15, 2009, Ginny Burns ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Social Security income ("SSI") benefits.  The Commissioner filed an Answer on April 6, 2010.  On June 15, 2010, the parties filed a Joint Stipulation ("JS").

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the Magistrate Judge.  The matter is now ready for decision.  After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and remanded for further proceedings in accordance with law and with this Memorandum Opinion and Order.

**BACKGROUND**

Plaintiff is a 33 year old female who was determined to have the medically determinable severe impairment of mood disorder.  (AR 11.)  Plaintiff has not engaged in substantial gainful activity since August 9, 2007, the application date.  (AR 11.)

Plaintiff's claim for SSI benefits was denied initially and on reconsideration on May 12, 2008.  (AR 9.)  She filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Joseph Schloss on March 16, 2009, in San Bernardino, California.  (AR 9.)  Claimant appeared and testified.  (AR 9.)  So did vocational expert Corinne Porter.  (AR 9.)

The ALJ issued an unfavorable decision on June 2, 2009.  (AR 9-16.)  The ALJ determined that Plaintiff has the residual functional capacity ("RFC")[1] to perform a full range of work at all exertional levels but with the following nonexertion limitation: the Claimant can perform short, repetitive tasks.  (AR 12.)  Based on this RFC, the ALJ found that Claimant could perform her prior relevant work as a janitor and, therefore, was not disabled within the meaning of the Social Security Act.  (AR 15-16.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the sole disputed issue that Plaintiff is raising as a ground for reversal is as follows:

1.  Whether the ALJ's Residual Functional Capacity ("RFC") limitation to simple, repetitive work was consistent with a Reasoning Level 3 job.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "'more than a mere scintilla' but less than a preponderance."

---

[1]  Residual functional capacity is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1  Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402

2  U.S. 389, 401 (1971)).

3      Substantial evidence is "such relevant evidence as a reasonable mind might accept

4  as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and

5  citations omitted).  This Court must review the record as a whole and consider adverse as

6  well as supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

7  2006).  Where evidence is susceptible to more than one rational interpretation, the ALJ's

8  decision must be upheld.  Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).  "However,

9  a reviewing court must consider the entire record as a whole and may not affirm simply by

10  isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting

11  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d

12  625, 630 (9th Cir. 2007).

13                          **SEQUENTIAL EVALUATION**

14      The Social Security Act defines disability as the "inability to engage in any substantial

15  gainful activity by reason of any medically determinable physical or mental impairment

16  which can be expected to result in death or . . . can be expected to last for a continuous

17  period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The

18  Commissioner has established a five-step sequential process to determine whether a

19  claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

20      The first step is to determine whether the claimant is presently engaging in

21  substantial gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the

22  claimant is engaging in substantially gainful activity, disability benefits will be denied.

23  Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the

24  claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746.

25  Third, the ALJ must determine whether the impairment is listed, or equivalent to an

26  impairment listed, in Appendix I of the regulations.  Id.  If the impediment meets or equals

27  one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at

28

141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work (PRW).  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.  If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

In this case, the ALJ concluded at step four of the sequential process that Plaintiff can perform her prior relevant work as a janitor as actually and generally performed and therefore is not disabled within the meaning of the Social Security Act.  (AR 15-16.)

**DISCUSSION**

The ALJ failed to develop the record adequately regarding Claimant's PRW and in not resolving obvious ambiguities that make meaningful review of the ALJ's decision impossible.  The ALJ also failed to make appropriate findings regarding Claimant's past relevant work as a janitor as both actually and generally performed.  The ALJ's short, two paragraph discussion of PRW is conclusory and unsupported by factual findings grounded in substantial evidence.  The ALJ's PRW determinations cannot stand.

**A.   Medical And Procedural Background**

Plaintiff alleged "mental impairment, bipolar, paranoia, schizophrenia, personality disorder and antisocial personality disorder." (AR 13, 103.)  She claims that she paces, gets agitated with employers, believes people are talking about her, and hears voices. (AR 13, 103.)

Plaintiff has a long and troubled psychiatric and criminal history.  She had a psychiatric admission at age 11. (AR 13.)  Her juvenile legal history includes assault and battery, threatening phone calls, assault on a police officer, vehicle theft, assault on a custodial officer, and voluntary manslaughter. (AR 14.)  At age 13, she stabbed a man who sexually molested her. (AR 14.)  Her adult legal history includes battery, assault with a deadly weapon, threatening a crime with intent to terrorize, battery by a prisoner, burglary, prostitution, passing a fallacious check, under the influence of controlled substances, and false identification to a police officer. (AR 14.)

While incarcerated, she received treatment for a psychiatric disorder or schizoaffective disorder and post-traumatic stress disorder. (AR 14.)  She was in Patton State Hospital from May, 2007, to August 8, 2007. (AR 14.)  She was diagnosed with bipolar disorder and cocaine dependence. (AR 14.)

The ALJ gave considerable weight to the consulting psychiatric evaluation of Dr. Shireen Damania conducted on November 6, 2007. (AR 147-150.)  On mental status examination, Dr. Damania found that there was no thought disorder (AR 149), but insight and judgment were mildly impaired. (AR 150.)  Claimant had discontinued psychotropic drugs. (AR 150.)  Dr. Damiana diagnosed Claimant with mood disorder, psychotic disorder and cocaine dependence in remission. (AR 150.)  She also observed that Claimant is able to understand, carry out and remember three and four step job instructions, but would have difficulty with detailed and complex job instructions. (AR 150.)   State agency review psychiatrists also diagnosed psychotic disorder, mood disorder, and cocaine dependence in

1  remission.  (AR 150.)  They concluded that Claimant could perform "simple, repetitive"

2  tasks.  (AR 15.)

3      The ALJ also relied on a January 17, 2008, mental status examination that indicated

4  the Claimant's "memory and cognitive functioning seemed to be fairly intact."  (AR 15.)

5  Judgment and insight were moderately to severely impaired and, according to the ALJ,

6  Claimant was diagnosed with a psychotic disorder.  The diagnosis also included personality

7  disorder.  (AR 172.)  Claimant was given a Global Assessment of Functioning ("GAF") score

8  of 69, indicating some difficulty in functioning.  (AR 15.)  The ALJ does not indicate in his

9  decision that the author of this mental assessment was a social worker.  (AR 173.)

10     Notwithstanding these diagnoses of psychotic disorder, personality disorder, bipolar

11 disorder, and substance disorder, the ALJ found only that the mood disorder was severe.

12 (AR 11.)  The ALJ also determined that none of the impairments, severe or nonsevere, met

13 or equaled a listing.  (AR 11-12.)  Plaintiff does not challenge the ALJ's step two and three

14 determinations.

15     Based on the various assessments of her mental impairments described above, the

16 ALJ at step four of the sequential process determined that Claimant had the residual

17 functional capacity to perform a full range of work at all exertional levels, subject to a

18 nonexertional limitation to "short, repetitive tasks."  (AR 12.)  Claimant does not challenge

19 the ALJ's RFC determination.

20     Based on Claimant's assessed RFC, the ALJ determined that Claimant could perform

21 her past relevant work as a janitor as actually performed.  (AR 15.)  It is this step four

22 determination that Plaintiff challenges.

23     **B.    Applicable Law Regarding Past Relevant Work ("PRW")**

24     A claimant has the burden of proving that he or she no longer can perform past

25 relevant work.  Pinto, 249 F.3d at 844.  The ALJ, however, has a duty to make the requisite

26 factual findings to support his conclusion on PRW.  Id.  This is done by examining a

27 claimant's RFC and the physical and mental demands of the claimant's PRW.  Id. at

28

844-45.

A claimant must be able to perform:  (1) the functional demands and job duties of a particular past relevant job as he or she actually performed it, or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-61; Pinto, 249 F.3d at 845.  In making this determination, the ALJ must make the following findings of fact:

       1.     A finding of fact as to the individual's RFC.

       2.     A finding of fact as to the physical and mental demands of the past job/occupation.

       3.     A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62.  Past work experience "must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability" to perform the functional activities of past work.  Id.  The ALJ's decision "must be developed and explained fully in the disability decision."  Id.

Social Security regulations advise the ALJ to consider first whether the individual still can do PRW as he or she actually performed it because individual jobs within a category may not entail all of the requirements of a job in that category set forth in the Dictionary of Occupational Titles ("DICOT").  SSR 96-8p; Pinto, 249 F.3d at 845.  The claimant is an important source of information about his or her PRW.  SSR 82-41; Pinto, id.  Other sources of information that may be consulted include vocational expert ("VE") testimony and DICOT.  20 C.F.R. § 404.1560 (b)(2) and § 416.960 (b)(2); SSR 82-61.

The ALJ then can proceed to determine whether a claimant can perform his or her PRW as generally performed.  Id.  Typically, the best source of how a job is generally performed in the national economy is the DICOT.  Id.  An ALJ may accept vocational expert testimony that varies from the DICOT, but the record must contain "persuasive evidence to support the deviation."  Id. at 846 (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir.

1   1995)).  The ALJ has an affirmative responsibility to ask whether a conflict exists between a

2   VE's testimony and the DICOT.  SSR OO-4p; Massachi v. Astrue, 486 F.3d 1149, 1153 (9th

3   Cir. 2007).  If there is a conflict the ALJ must obtain a reasonable explanation for the conflict

4   and then must decide whether to rely on the VE or DICOT.  Id.; Massachi, 486 F.3d at 1153.

5   Failure to do so, however, can be harmless error where there is no conflict or the VE

6   provides sufficient support to justify variation from DICOT.  Id. at 1154 n.19.

7        Adequate documentation of past work includes factual information about those work

8   demands bearing on medically established limitations.  SSR 82-62.  Detailed information

9   about mental demands must be obtained as appropriate.  Id.  For a claim involving a mental

10   impairment, "care must be taken to obtain a precise description of the particular job duties

11   which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks,

12   independent judgment, working with other people, etc."  Id. (emphasis added).

13       **C.     The ALJ Failed To Develop The Record Adequately**

14       Other than noting that Claimant had prior work as a janitor, the ALJ fails to present

15   any details about or identify the actual job functions of her past work as a janitor as she

16   actually performed it.  Claimant's only significant past employment was as a janitor at

17   Walmart for nine months in 1998-1999.  (AR 23, 93-94, 104.)  She described the job as

18   "floor waxing, sweeping, cleaning spills."  (AR 104.)  She used machines, tools, and

19   equipment.  (AR 104.)  Exertionally, Claimant stated that she lifted and carried mops and

20   dust brooms all day, she had to wax floors, buff floors, strip the floor, vacuum floors, and

21   sometimes cleaned the bathroom.  (AR 104.)

22       At the hearing, when the VE Ms. Porter took the stand, the ALJ began by asking her

23   to make sure her testimony was consistent with the DICOT and if she disagreed with the

24   DICOT "to let us know."  (AR 30.)  Ms. Porter never answered or got the chance to answer

25   because the ALJ immediately began another colloquy:

26

27

28

1    Q: Please make sure that your testimony is consistent with the

2    Dictionary of Occupational Titles, if you disagree with the DOT let us know.

3    Give me exertional and skill level of past relevant jobs?

4    A:   There are a number of short duration jobs under $100, the

5    longest job was as, per the record and her testimony, janitor, which is 382-

6    664-110, medium, semiskilled, SVP three.

7    (AR 30.)  Ms. Porter obviously was referencing the DICOT job classification and limitations

8    specified therein for the job of janitor.  DICOT, 1991 WL 673265 (G.P.O.).  SVP three is the

9    specific vocational preparation needed for the job, which is 1 to 3 months.  Id.; see also

10   DICOT App. C, 1991 WL 688702 (G.P.O.); Meissl v. Barnhart, 403 F. Supp. 2d 981, 983

11   (C.D. Cal. 2005).  The VE did not mention the specific job functions of Claimant's Walmart

12   job.

13        The VE in the comment above also made no mention of the mental demands of the

14   janitor job, either as actually performed or as generally performed, perhaps because the

15   ALJ never asked for them in his question.  DICOT 382.664-010 indicates that a janitor is a

16   Reasoning Level 3 occupation, which means that an individual must:  "Apply commonsense

17   understanding to carry out instructions furnished in written, oral or diagrammatic form.  Deal

18   with the problems involving several concrete variables in or from standardized situations."

19   Id.; see also DICOT App. C setting forth General Educational Development ("GED")

20   reasoning levels; Meissl, 403 F. Supp. 2d at 983.

21        The ALJ then posed a hypothetical question to the VE incorporating no exertional

22   limitations, moderate mental limitations but able to function satisfactorily, and "limited to

23   short, repetitive tasks":

24   Q: What jobs could that do . . . could that person do if she couldn't

25   do her past relevant job or can she do her past relevant?

26

27

28

1          A: I think that past work is performable, it's an SVP of three, but it's,

2              but it is short durational repetitive cleaning type functions.

3   (AR 30.)

4          The VE once again began by referencing the DICOT.  The VE did not appear to

5   address Claimant's PRW as actually performed, or at least did not distinguish between

6   PRW as actually performed and generally performed.  The VE does not specifically mention

7   the mental demands of the job of janitor.  The VE's characterization of the janitor job as

8   comprising "short durational repetitive cleaning type functions" is more a description of the

9   job functions, than an assessment of the mental demands of those job functions.  The VE

10  does not discuss or address GED reasoning levels.  The VE also does not mention the

11  specific job functions of the Walmart job or its mental demands.  The VE does not indicate

12  whether the job functions of the Walmart job differ from the DICOT janitor classification.

13         Although the Ninth Circuit has not addressed the issue yet, district courts in this

14  Circuit have held that a limitation to simple, repetitive tasks is consistent with GED

15  Reasoning Level Two.  Bagshaw v. Astrue, 2010 WL 256544, *6 (C.D. Cal. 2010); Etter v.

16  Astrue, 2010 WL 4314415, *4 (C.D. Cal. 2010); Pak v. Astrue, 2009 WL 2151361, *7 (C.D.

17  Cal. 2009); Tudino v. Barnhart, 2008 WL 4161443, *10-*11 (S.D. Cal. 2008); Torrez v.

18  Astrue, 2010 WL 2555847, *7-*9 (E.D. Cal. 2010).  That means, "Apply commonsense

19  understanding to carry out detailed but uninvolved written or oral instructions.  Deal with

20  problems involving a few concrete variables in or from standardized situations."  DICOT

21  App. C, 1991 WL 688702 (G.P.O.).  District court authorities in this Circuit have held that a

22  limitation to simple, repetitive instructions is inconsistent with Reasoning Level 3 jobs.

23  Bagshaw; Etter; Pak; Tudino; Torrez, supra.  Thus, absent persuasive evidence to justify a

24  variation from the DICOT job functions, the ALJ's limitation to simple, repetitive tasks would

25  mean Claimant could not perform her PRW as a janitor, which requires a Reasoning

26  Level 3.

27

28

The record before the Court on Plaintiff's PRW is ambiguous and not developed adequately.  The VE never discussed the mental demands of the job of janitor, either as actually performed or generally performed.  There is no discussion of the GED Reasoning Levels.  The ALJ never received an answer from the VE whether she was varying from the DICOT, much less an adequate explanation for the conflict or any evidence that would support varying from the DICOT.  The VE's testimony is so ambiguous one cannot tell whether the VE is addressing Plaintiff's PRW as actually or generally performed or both, nor can one tell whether the VE simply means to characterize the DICOT job functions as they are or to vary from them.

In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly and to assure that the claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  The ALJ has a basic duty to inform himself about facts relevant to his decision.  Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring).  The ALJ's duty to develop the record exists even when the claimant is represented by counsel.  Tonapetyan, 242 F.3d at 1150.

Ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to conduct an appropriate inquiry.  Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150.  The ALJ may discharge this duty by subpoenaing the claimant's physicians, submitting questions to them, continuing the hearing or keeping the record open after the hearing to allow supplementation of the record.  Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150.

Here, the ALJ failed to develop the record adequately by failing to resolve the obvious ambiguities described above.

**D.    The ALJ's Determination Of PRW As Actually Performed
          Must Be Reversed**

The ALJ decision begins with Plaintiff's PRW as <u>generally</u> performed.  Social Security regulations and Ninth Circuit cases, however, indicate that step four PRW determinations should begin with past work as it was <u>actually</u> performed in a particular job.  Accordingly, the Court will begin with the ALJ's determination of PRW as actually performed:

> In comparing the claimant's residual functional capacity with the mental demands of this work [her past relevant work as a janitor], the undersigned finds that the claimant is able to perform it as actually performed.  The latest Global Assessment of Functioning was 69 (Exhibit 6F, p. 5).  According to the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV) (4th ed. 1994), a GAF score between 61-70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well.  Memory and cognitive function appear fairly intact.  (Exhibit F 6F, p. 5).

(AR 15-16.)  The above analysis is plainly inadequate to support the ALJ's determination.

The only evidence presented is the social worker's GAF assessment and evaluation of memory and cognitive function, which are relevant only to RFC and already cited in the ALJ's RFC determination that included a limitation to simple, repetitive tasks.  (AR 13.)  The RFC addressed Plaintiff's mental limitations, not the mental demands of the janitor job.  The ALJ was required to make findings of fact as to the physical and mental demands of the past job/occupation.  SSR 82-62.

The ALJ's purported "finding" that, comparing Claimant's RFC "with the mental demands of this work," Claimant can perform his PRW as actually performed (AR 15) is nothing more than a bare conclusion with no factual support.  As already noted, the ALJ never mentioned or discussed the specific job functions or mental demands of the Walmart janitor job.  The VE also never mentioned or discussed the specific job functions or mental demands of the Walmart job.

1   Neither the ALJ nor the VE discuss the DICOT's GED Reasoning Level 3 for janitors.

2   By the authority in this Circuit, the ALJ's limitation to simple repetitive tasks would conflict

3   with the DICOT's specification of Reasoning Level 3 for janitor positions.  The ALJ never

4   obtained an answer from the VE whether her opinion on PRW varied from the DICOT.  The

5   VE did not testify that the mental demands of the Walmart job were less than those in janitor

6   jobs as generally performed in the economy.  There is no evidence that the mental

7   demands of the Walmart job are less than Reasoning Level 3.

8   The Commissioner argues that the DICOT plays no part in the determination of PRW

9   as actually performed, but cites no authority to support that contention.  Two Ninth Circuit

10  decisions do name two sources of claimant information that "may be used," the claimant's

11  testimony and a vocational or work history report, but these cases do not preclude use of

12  other sources of information.  Pinto, 249 F.3d at 845 (emphasis added); Lewis v. Barnhart,

13  281 F.3d 1081, 1083 (9th Cir. 2002).  The holdings in both Pinto and Lewis are based on

14  Social Security regulations.  In 2003, the Social Security Administration amended two

15  regulations that now expressly provide for use of vocational expert testimony and the

16  DICOT in making determinations of PRW both as actually performed and as generally

17  performed.  20 C.F.R. § 404.1560 (b)(2) and § 416.960 (b)(2); see Daniels v. Astrue, 2007

18  WL 2126395, *5 n.7 (W.D. Va. 2007).  An even earlier regulation makes reference to

19  "significant variations between a claimant's description and the description shown" in the

20  DICOT.  SSR 82-61.  Several cases in this Circuit have applied the DICOT reasoning levels

21  to past jobs as actually performed, although these cases did not distinguish PRW as

22  generally performed from actually performed.  See Pak, Etter, Torrez, supra.  The Court

23  sees nothing inappropriate in embracing GED Reasoning Level 3 as the level required for

24  the Walmart janitor job in the absence of any evidence or opinion that the mental demands

25  of the Walmart job differ from those of the janitor classification in the DICOT.

26  The Commissioner also cites Dr. Damania's conclusion that Plaintiff was able to

27  understand, remember, and carry out three and four step instructions.  (AR 14-15, 150.)

28

1    Again, however, this information is relevant to RFC and already incorporated into Claimant's

2    RFC with a limitation to simple, repetitive tasks that are consistent with Reasoning Level 2.

3    Reasoning Level 1 provides that a claimant must apply common sense understanding to

4    carry out "simple one-or-two step instructions."  DICOT App. C, 1991 WL 688702 (G.D.O.).

5    This implies that, at Reasoning Level 2, a claimant can carry out three and four step

6    instructions.  The ALJ's reference to three and four step instructions does not mean that

7    Claimant can perform Reasoning Level 3 jobs.[2]

8         The ALJ, in determining Claimant's PRW as actually performed, failed to obtain

9    detailed information about the mental demands of the job of janitor and to make requisite

10   findings of fact as required by SSR 82-62.  The ALJ did not carefully consider past work

11   experience or even discuss it.  Id.  The ALJ decision was not developed and explained fully.

12   Id.  The ALJ's decision must be reversed because it is not based on substantial evidence.

13        **E.    The ALJ's Determination Of PRW As Generally Performed
                  Also Must Be Reversed**

14        The ALJ's PRW determination as generally performed is short, conclusory,

15   ambiguous, lacking in factual support and requisite factual findings.

16        Here is the ALJ's determination:

17        The vocational expert testified that the job of janitor (Dictionary of

18        Occupation Titles 382.664-010) is medium in exertion and semi-skilled with

19        an SVP of 3.  The job tasks are of short duration and repetitive in nature.

20        With the residual functional capacity assessed herein, the claimant could

21        perform her past relevant work as a janitor.

---

24        [2]  Another important omission in the ALJ decision is any assessment of how

25   Claimant's extensive psychiatric history has affected her ability to perform her prior job.
     Claimant's Walmart job experience occurred over 10 years ago in 1998-99 when she was

26   21 or 22 years old.  There is no record evidence of how successfully or unsuccessfully she
     performed that job.  There is no assessment of her psychiatric limitations then or now, or

27   how her intervening psychiatric disturbances have affected her.  These concerns, of course,
     go to RFC which was not disputed by Claimant.

28

(AR 15.)  The parties express some inconsistency on whether the ALJ's determination even addresses PRW as generally performed but nonetheless litigate the issue fully.  The Court is satisfied from the language above and the heading, "The claimant is capable of performing past relevant work as a janitor" (AR 15), that the ALJ decided PRW both as generally performed as well as actually performed.

The ALJ's decision references the DICOT physical demands for the job of janitor but never discusses or mentions that DICOT specifies Reasoning Level 3 for the mental demands of the job.  The Commissioner suggests that the VE's characterization of the janitor job as consisting of job tasks that are "of short duration and repetitive in nature" was meant to express variation from DICOT and is 15a sufficient explanation for the variance.  As already noted, the Court does not believe the VE's testimony is clear.  The Court cannot discern whether the VE was simply describing the job functions of a janitor as generally performed, which includes a Reasoning Level of 3 inconsistent with Claimant's RFC, or reclassifying those job functions in a way that would be consistent with Reasoning Level 2.  If the latter, the ALJ did not obtain an explanation for the deviation.  The decision reflects no awareness that there was any deviation.  The fact that neither the ALJ nor VE ever mention the GED reasoning levels lead the Court to believe that neither was aware of the case law in this Circuit regarding the inconsistency between a limitation to simple, repetitive tasks and Reasoning Level 3 jobs.

The ALJ failed to obtain adequate information about the mental demands of the janitor job as generally performed and to make findings of fact about those mental demands based on substantial evidence.  Even assuming the VE's testimony conflicted with the DICOT, there is no meaningful explanation or factual support offered for the variation.  The ALJ's determination of generally performed PRW is not developed and explained fully.  The ALJ's decision must be reversed.

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered reversing the step four decision of the Commissioner of Social Security and remanding for further proceedings in accordance with law and with this Memorandum Opinion and Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: <u>November 18, 2010</u>                    <u>  /s/ John E. McDermott  </u>
                                                    JOHN E. MCDERMOTT
                                                    UNITED STATES MAGISTRATE JUDGE